UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAZEL C. COOPER,                     :       CIVIL NO. **4:04-CV-2166**
                                     :
            Plaintiff                :       (Judge McClure)
                                     :
        v.                           :       (Magistrate Judge Smyser)
                                     :
JO ANNE B. BARNHART,                 :
Commissioner of                      :
Social Security,                     :
                                     :
            Defendant                :


### REPORT AND RECOMMENDATION


     The plaintiff has brought this civil action under the

authority of 42 U.S.C. § 405(g) to obtain judicial review of

the decision of the Commissioner of Social Security denying the

claim of the plaintiff for Social Security disability insurance

benefits.


     On December 28, 2002, the plaintiff, Hazel C. Cooper,

applied for disability insurance benefits.  She claimed that

she became disabled on February 2, 2002, as the result of

osteoarthritis, depression, fibromyalgia, hypothyroidism and

related pain and symptoms.  She has had two thyroid surgeries.
The claim was denied initially and on reconsideration.  The
plaintiff filed a request for a hearing, and a hearing was held
before an administrative law judge (ALJ) on November 4, 2003.

At this hearing the plaintiff and a vocational expert
testified.  The plaintiff described her principal symptoms as
fatigue and pain, loss of sensation in her legs, difficulty in
sleeping, muscle spasms and depression.  She can not perform
her work as a beautician.  She can not stand or sit for
prolonged periods.  She has help performing household chores.
She paints, with acrylics, as a hobby.

The vocational expert stated that there are jobs in the
economy performable by a person with the plaintiff's age and
vocational characteristics who can perform a limited range of
light work.  The described person (Tr. 52) could not perform
the plaintiff's work as a hairdresser, but could be a cafeteria
attendant, an officer helper or a clerical assistant.  But if a
sit-stand option were required, positions as a gate tender or
as a cashier or as a machine tender could be performed.  If a

2

person were to have a moderate to moderately severe limitation
on the ability to maintain persistence and pace, these jobs
could not be performed.  Needing to lie down and unscheduled
breaks would also impact negatively on performing these jobs to
an employer's expectations.

On November 26, 2003, the ALJ issued her decision
denying the plaintiff benefits.  Tr. 18-26.  The Appeals
Council denied the plaintiff's request for review (Tr. 5),
making the ALJ's decision the final decision of the
Commissioner.

The plaintiff filed her complaint with this court on
September 28, 2004.  The defendant filed an answer to the
complaint and a copy of the administrative record on
December 1, 2004.   Pursuant to Local Rules 83.40.4 and
83.40.5, the plaintiff filed her brief on February 25, 2005 and
the defendant filed her brief on March 17, 2005.   No reply
brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's

impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

The plaintiff argues that the ALJ has not supplied an adequate explanation for the rejection of the plaintiff's claim in that there is no explanation stated for why witnesses' statements that supported the claim were either not considered at all or were found not credible and not probative.  The plaintiff argues that there was error on the part of the ALJ in the determination of the residual functional capacity in that the ALJ determined that the plaintiff to be gainfully employed would need to have an option to sit or stand but did not go

beyond that generalization to determine the plaintiff's

particular sit/stand needs and to do so in relationship to the

requirements of particular jobs.  The plaintiff argues that

there was error on the part of the ALJ in the evaluation of the

plaintiff's credibility and of her "subjective complaints"

because factors of a lengthy work history and the effects of

medications were not discussed.


     The adjudication is based upon findings made about the

claimant's subjective symptoms and her credibility.  The ALJ's

essential credibility findings relating to subjective symptoms

are as follows:

> The claimant testified and stated in the record
> that she has joint, neck, foot, shoulder and
> back pain, thyroid problems, muscle spasms,
> difficulty standing and sitting for prolonged
> periods of time, trouble lifting more than a
> gallon of milk and holding her arms up,
> fatigue, requires rest between activities, has
> muscle pain and weakness, difficulty going out
> in public and starting and completing
> activities, requires frequent change in
> positions, has problems planning each day, and
> has difficulty thinking and concentrating.  She
> also alleges feelings of depression, chest
> pain, requiring naps during the day due to
> chronic fatigue, disturbed sleep, medication-
> induced side effects of drowsiness and nausea,

and difficulty performing activities of daily
living such as shopping, cooking, cleaning, and
laundry (Exhibit 1E).

The objective medical evidence establishes that
the claimant has osteoarthritis, depression,
fibromyalgia and hypothyroidism with a history
of two thyroid surgeries and radioactive
ablation treatment (Exhibits 5F and 14F),
medically determinable impairments that could
reasonably be expected to produce the
claimant's symptoms.  However, the claimant is
not entirely credible concerning the intensity,
duration and limiting effects of the symptoms.
While the claimant alleges the above problems,
a February 2002 examination report shows that,
although the claimant had tenderness over the
L4-5 area with palpation and sciatic arch
tenderness, she was able to heel and toe walk,
was able to forward bend fairly readily, had
normal backward extension, no problems with
lateral movements, and had equal and bilateral
deep tendon reflexes.  A follow-up note shows
that the claimant improved with medication and
did not require a second dosepak, that she
reported feeling much better without pain down
the legs, that as long as she was careful, her
back was in "pretty good shape," and that she
had good muscle strength bilaterally and
negative straight leg lifting.  In September
2002, the claimant was seen for an exacerbation
of her back symptoms.  At this time, a nurse
practitioner reported that the claimant had
some tenderness over the sciatic arch but
negative straight leg lifting and that she was
able to heel and toe walk a little more easily
than previously.  Also, an MRI report revealed
normal lordosis, lateral weight bearing plane
and lumbosacral angle, unremarkable
paravertebral soft tissues, well-maintained
disc spaces, and a developmentally narrowed

8

central canal with bony hypertrophy of the
arthrodial joints and soft tissue hypertrophy
of ligamentum flavum at L4-5 creating moderate
central canal stenosis.  Progress notes also
show that, while the claimant was diagnosed
with an enlarged right-sided thyroid cyst, it
subsequently spontaneously resolved and
returned back to its normal size (Exhibit 5F).

In December 2002, the claimant required needle
aspirate biopsy of her right thyroid nodule
following enlargement rapidly overnight due to
a hemorrhage (Exhibit 7F).  Also in December
2002, it was noted that the claimant reported
tenderness of the wrists, elbows and shoulders
but had no significant degenerative change or
synovitis, no objective inflammation or
significant degenerative change of the lower
extremities, a normal motor examination and
intact sensation; in February 2003, her
treating physician recommended she exercise and
in March 2003, Joyce Burd, M.D., reported that
there was no evidence of objective inflammation
of the peripheral joints, good range of motion
of the shoulders, and that a lot of the acute
back pain was improved (Exhibit 8F).
Additionally, in March 2003, the claimant
underwent a thyroidectomy and subsequent
radioactive ablation treatment.  In July 2003
she was noted to be mildly clinically
hypothyroid after having been off her thyroid
medication for iodine treatment.  In July 2003,
the claimant reported feeling very well and
that her energy level was improving, and that
she was more stable from a rheumatological
standpoint (Exhibit 14F).  Moreover, in
September 2003, Dr. Burd reported that the
claimant was in no acute distress, had no
synovitis of the lower or upper extremities,
and reported only some diffuse discomfort down
the legs with straight leg raising (Exhibit

9

> 17F).  There is also no indication that the
> claimant has required significant ongoing
> treatment for her depression.

Tr. 20-21.

The plaintiff argues that it was error for the ALJ not to articulate why she found witnesses who supported the plaintiff's claim not to be credible.  These witnesses did not testify but submitted statements.  Tr. 128-132, 163, 164.  The defendant acknowledges that these were not specifically discussed, but presents factual arguments reconciling the contents of these statements with the ALJ's findings.  At the appellate stage, it is not the role of the court to make fact findings, nor is it the role of the court to speculate as to how certain evidence in the record was weighed or might have been weighed by the fact finder.  The ALJ did not exclude the hearsay statements of out-of-court witnesses.  The one witness employed a form designed for completion by an out-of-court witness.  There is no apparent reason why these statements should not have been considered, and there is no indication that these ostensibly probative statements were considered. The plaintiff had a lengthy work history, also not ostensibly

10

considered by the ALJ, and these witnesses' statements described among other things her observed declining workplace abilities.  They were relevant and as far as we can see were probative.  The witnesses' statements are consistent with the plaintiff's testimony, which the ALJ found not to be "entirely credible."  Corroboration of a party's testimony by other witnesses is, naturally and often, a factor that causes a fact finder to assign greater credibility to the party's testimony than otherwise might have been the case.  Therefore, in determining that the plaintiff was not adequately credible to satisfy the ALJ, it was important that the ALJ demonstrate that the corroborating witnesses' statements had been taken into consideration in that determination.

The Third Circuit Court of Appeals has held it to be required that the ALJ consider and weigh all of the material non-medical evidence.  *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 122 (3d Cir. 2000). This means that the ALJ must at the least state the substance of a material statement from a non-medical witness and provide some explanation of how it is factored into the decision.

The plaintiff argues that her residual functional capacity was not determined in the manner prescribed by the Commissioner's regulations and rulings in that the ALJ did not specify her findings as to the plaintiff's ability to sit and to stand.  The plaintiff argues that a blanket finding that a claimant needs to be able to alternate sitting and standing is not enough.

The ALJ found in "Findings," Tr. 25, that the plaintiff "has the residual functional capacity to perform light work as defined by the Commissioner of the Social Security Administration that offers opportunities to alternate between sitting and standing, that requires no more than occasional bending, stooping, kneeling, crouching, crawling, pushing, pulling, climbing stairs, twisting or squatting, and does not involve concentrated exposure to high humidity and temperature extremes."  Tr. 25.  The ALJ asked the vocational expert whether "a sit/stand option" would affect "any of the jobs you testified to including the past work and two other jobs?" Tr. 55.  The ensuing testimony identified light jobs with a sit/stand option as a gatekeeper or as a cashier as to which

the vocational expert stated that there is not a "total
sit/stand option." Tr. 56-58. Without further consideration
of the suitability of these jobs for someone whose sitting and
standing requirements are substantially those of the plaintiff,
the ALJ found that the plaintiff can work as a gate keeper or
as a cashier. We can not conclude that this finding is based
on substantial evidence.

One residual functional capacity assessment limited the
plaintiff to standing and walking no more than one hour in an
eight hour day. The ALJ rejected this residual functional
capacity assessment in part because the assessment appears to
be based upon the plaintiff's allegations and because the
plaintiff is not entirely credible. Without evaluating
particular testimonial assertions of the plaintiff and without
considering corroborating witnesses' statements, the ALJ found
the plaintiff not to be entirely credible. Then, that general
negative credibility finding is applied to the credibility of
functional capacities' evaluations made about the plaintiff, on
the theory that subjective symptoms being reported to a medical
evaluator were from a non-credible source. Insofar as the ALJ

has narrowed her general negative credibility assessment of the plaintiff to a determination that the plaintiff has not been credible about her capacity to sit and her capacity to stand, a reasoned decision must contain some explanation of that determination rather than the imputation of a "not entirely credible" finding to negate a residual functional capacity report.

This case should be remanded for further consideration of all of the evidence relevant to the plaintiff's credibility, including her work history, the effects of her medications and all witnesses' statements.  If, after the consideration of all of that evidence, the ALJ determines that a job with a sit-stand option can be performed but that no further refinement of the sit/stand option is necessary, that should be explained.

For the foregoing reasons, it is recommended that this case be remanded to the Commissioner for further consideration.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

DATED:   April 21, 2005.

14